FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 10, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JIM S.,[1] | No. 1:20-cv-03034-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 18, 22 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 18, 22. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

1    is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

2    motion, ECF No. 18, and grants Defendant's motion, ECF No. 22.

### JURISDICTION

4    The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

### STANDARD OF REVIEW

6    A district court's review of a final decision of the Commissioner of Social

7    Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

8    limited; the Commissioner's decision will be disturbed "only if it is not supported

9    by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

10   1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

11   reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

12   (quotation and citation omitted).  Stated differently, substantial evidence equates to

13   "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

14   citation omitted).  In determining whether the standard has been satisfied, a

15   reviewing court must consider the entire record as a whole rather than searching

16   for supporting evidence in isolation. *Id.*

17   In reviewing a denial of benefits, a district court may not substitute its

18   judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

19   1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

20   rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.

Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

ORDER - 3

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER - 4

1    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

2    defined generally as the claimant's ability to perform physical and mental work

3    activities on a sustained basis despite his or her limitations, 20 C.F.R. §

4    416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

5         At step four, the Commissioner considers whether, in view of the claimant's

6    RFC, the claimant is capable of performing work that he or she has performed in

7    the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

8    capable of performing past relevant work, the Commissioner must find that the

9    claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

10   performing such work, the analysis proceeds to step five.

11        At step five, the Commissioner considers whether, in view of the claimant's

12   RFC, the claimant is capable of performing other work in the national economy.

13   20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

14   must also consider vocational factors such as the claimant's age, education and

15   past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

16   Commissioner must find that the claimant is not disabled.  20 C.F.R. §

17   416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis

18   concludes with a finding that the claimant is disabled and is therefore entitled to

19   benefits.  *Id.*

20

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 18, 2016, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of August 16, 2015. Tr. 15, 80, 175-83. The application was denied initially, and on reconsideration. Tr. 103-06, 113-19. Plaintiff appeared before an administrative law judge (ALJ) on October 4, 2018. Tr. 45-79. On November 15, 2018, the ALJ denied Plaintiff's claim. Tr. 12-33.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 18, 2016. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: status post open reduction and plate fixation (ORIF) for left orbital floor fracture; left zygomatic maxillary complex fracture and left zygomatic arch fracture (skull fracture) with resulting diplopia/blurred vision; depression; anxiety; and posttraumatic stress disorder (PTSD). *Id.*

ORDER - 6

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ then concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> [Plaintiff] needs to avoid climbing ropes, ladders, or scaffolds; [Plaintiff] is limited to no more than frequent balancing or climbing of ropes and stairs; [Plaintiff] will need to avoid unprotected heights, moving machinery, and similar hazards; and [Plaintiff] is further limited to simple, repetitive, and routine tasks with no contact with the general public.

Tr. 20.

At step four, the ALJ found Plaintiff is unable to perform any of his past relevant work. Tr. 27. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as janitor, laundry worker, and hand packager. Tr. 28. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision. *Id.*

On January 22, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence; and

2. Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 18 at 2.

### DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinions of Pamela Miller, Ph.D.; John Gilbert, Ph.D.; Rebecca Nelson, ARNP; Alvin Massenburg, PA-C; and N.K. Marks, Ph.D.  ECF No. 18 at 9-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight

ORDER - 8

to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir.

ORDER - 9

2014) (alteration in original); *see* 20 C.F.R. § 416.913 (2013).[2]  However, an ALJ

is required to consider evidence from non-acceptable medical sources, such as

therapists.  20 C.F.R. § 416.913(d) (2013).[3]  An ALJ may reject the opinion of a

non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*,

763 F.3d at 1161.

### 1.  Dr. Miller and Dr. Gilbert

On April 18, 2017, Dr. Miller conducted a psychological consultative

examination and rendered an opinion on Plaintiff's functioning.  Tr. 363-66.  Dr.

Miller diagnosed Plaintiff with PTSD.  Tr. 366.  She opined Plaintiff is "usually

able to reason and to solve simple problems," he is easily agitated with complex

problems or situations, he becomes very agitated and overwhelmed with difficult

or confusing situations, he becomes anxious and worried that he is "losing it," he

can remember simple instructions but sometimes gets confused with complicated

---

[2] The regulation that defines acceptable medical sources is found at 20 C.F.R. §

416.902 for claims filed after March 27, 2017.  The Court applies the regulation in

effect at the time the claim was filed.

[3] The regulation that requires an ALJ's consider opinions from non-acceptable

medical sources is found at 20 C.F.R. § 416.920c for claims filed after March 27,

2017.  The Court applies the regulation in effect at the time the claim was filed.

ORDER - 10

1  instructions and forgets complicated instructions, he is usually able to maintain his

2  concentration and attention but at times his anxiety interferes with his ability to

3  stay focused, his social functioning is adequate, and he is able to adapt to change.

4  *Id.*

5      On May 1, 2017, Dr. Gilbert, a State agency psychological consultant,

6  rendered an opinion on Plaintiff's functioning.  Tr. 98-99.  Dr. Gilbert opined

7  Plaintiff has moderate limitations in his ability to carry out detailed instructions

8  and maintain attention/concentration for extended periods, complete a normal

9  workday/workweek without interruptions from psychologically-based symptoms

10  and perform at a consistent pace without an unreasonable number and length of

11  rest periods, understand/remember detailed instructions but he is capable of simple

12  routine tasks, interact appropriately with the general public, and respond

13  appropriately to changes in the work setting.  *Id.*  Dr. Gilbert further opined

14  Plaintiff should avoid working with the general public, he would benefit from a

15  routine work environment due to being easily overwhelmed, and although he

16  would have difficulty maintaining concentration/attention, he remains capable of

17  maintaining a normal workday/workweek.  Tr. 99.  The disability determination

18  explanation summarized Dr. Miller's opinion as "able to complete [simple routine

19  tasks], anxiety interferes occasionally [with] his ability to stay focused."  Tr. 90.

20  The ALJ gave great weight to the opinions of Dr. Gilbert and Dr. Miller.  Tr. 25.

ORDER - 11

As Dr. Gilbert is a non-examining source, the ALJ must consider the opinion and whether it is consistent with other independent evidence in the record. *See* 20 C.F.R. § 416.927(b),(c)(1); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Lester*, 81 F.3d at 830-31. As Dr. Miller is an examining source whose opinion was contradicted by the opinion of Dr. Marks, Tr. 391-402, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject the opinion. *See Bayliss*, 427 F.3d at 1216.

Plaintiff argues the ALJ erred in giving great weight to Dr. Miller and Dr. Gilbert's opinions and then failing to incorporate Plaintiff's difficulties focusing into the RFC. ECF No. 18 at 10-11; ECF No. 23 at 3. Plaintiff contends the ALJ erred because the ALJ summarized Dr. Miller's opinion as stating Plaintiff can maintain concentration and attention, which is inconsistent with Dr. Miller opining Plaintiff can "usually" maintain concentration/attention. ECF No. 18 at 10. Plaintiff further argues the ALJ should have specified the amount of time Plaintiff would be off-task, and the failure to do so was harmful error because the vocational expert testified an individual who is off-task 20 percent of the time is unable to sustain work. *Id.* However, Dr. Gilbert considered Dr. Miller's opinion, and Dr. Gilbert also stated Plaintiff would have some difficulty maintaining concentration/attention, but Dr. Gilbert's opinion was that Plaintiff "remains capable of maintaining for a normal work day/week" and the opinions resulted in a

ORDER - 12

finding of non-disability.  Tr. 99, 101.  Dr. Miller did not specify a percentage of the time Plaintiff would be able to maintain attention/concentration, and the opinion that Plaintiff is usually able to maintain attention is not indicative of a disabling limitation.  Tr. 366.  Plaintiff also argues Dr. Gilbert's opinion was disabling because the term "occasional" is defined as up to one-third of the time, and Dr. Gilbert opined Plaintiff's anxiety occasionally interferes with his ability to stay focused.  ECF No. 18 at 10-11 (citing Tr. 90).  However, SSR 96-9p defines occasionally as "occurring from very little up to one- third of the time."  SSR 96-9p.  As Dr. Gilbert's opinion did not result in a finding of disability, the ALJ reasonably interpreted Dr. Gilbert's opinion as not reflecting a disabling limitation. The ALJ incorporated Dr. Gilbert and Dr. Miller's opinions into the RFC and thus did not reject any portion of the opinions.

*2.  Ms. Nelson*

On September 10, 2015, Ms. Nelson, a treating nurse practitioner, rendered an opinion on Plaintiff's functioning. Tr. 369-71.  Ms. Nelson opined Plaintiff's balance problems due to head trauma cause severe limitations in all areas of functioning and he is unable to meet the demands of even sedentary work.  Tr. 370-71.  The ALJ gave no weight to Ms. Nelson's opinion.  Tr. 26.  As Ms. Nelson is not an acceptable medical source, the ALJ was required to give germane reasons to reject her opinion.  *See Ghanim*, 763 F.3d at 1161.

ORDER - 13

The ALJ found Ms. Nelson rendered her opinion while Plaintiff was still recovering from an injury and surgery.  Tr. 26.  Temporary limitations are not enough to meet the durational requirement for a finding of disability.  20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning").

Plaintiff was assaulted in August 2015and underwent reconstructive surgery in September 2015.[4]  Tr. 372.  Ms. Nelson rendered her opinion less than a month after Plaintiff's injury and only nine days after the surgery.  Tr. 369-71.  The ALJ noted Plaintiff was still recovering from his injury at the time of Ms. Nelson's opinion.  Tr. 26.  Regarding his physical impairment, the ALJ found that one month after surgery, Plaintiff was alert, in no acute distress, he had no erythema or inflammation, a healing facial fracture, normal pupil appearances and reactions,

---

[4] A consultative examination noted August 2014 as the month of Plaintiff's injury, Tr. 358, which the ALJ then noted as the injury date, Tr. 22, however Plaintiff alleges disability beginning August 2015, and other records confirm an August 2015 injury, Tr. 260, 264, 272, 495, rather than an August 2014 injury.

ORDER - 14

and a normal gait, and he was prescribed pain medication.  Tr. 22 (citing Tr. 249-51).  In December 2015, Plaintiff reported pain below his left eye and received a refill on his pain medication, but he denied headaches, changes in vision or eye discharge, and the physical examination indicated he had slight inflammation of the left orbit but an otherwise normal examination.  Tr. 22 (citing Tr. 304-06).  In October 2016, Plaintiff reported a right elbow injury when putting a car on a car dolly and pushing the car.  Tr. 22 (citing Tr. 301).  In December 2016, Plaintiff complained of double vision, problems reading and difficulty focusing with his left eye but denied pain, vision changes or eye discharge and the examination was normal except diminished sensation to touch in the left lateral inferior orbit, and Plaintiff had 20/30 vision in the left eye.  Tr. 22 (citing Tr. 328-30).  By January 2017, Plaintiff had a completely normal physical examination, Tr. 23 (citing Tr. 326), and a normal examination in April 2017 besides post-traumatic changes to the left orbit/face, and 20/30 vision in the right eye and 20/50 vision in the left eye without lenses.  Tr. 23 (citing Tr. 359-60).  In July 2018, Plaintiff denied double vision, blurred vision or headaches.  Tr. 23 (citing Tr. 656).

Plaintiff contends the longitudinal evidence demonstrates Plaintiff had continued balance issues, which supports Ms. Nelson's opinion.  ECF No. 18 at 11-12.  Plaintiff cites to four occasions between December 2015 and April 2018 during which he reported double vision, blurred vision, and/or loss of equilibrium

as evidence of his ongoing symptoms. *Id.* (citing Tr. 258, 304, 358, 420). While there are multiple occasions Plaintiff reported ongoing symptoms, there is minimal objective evidence of ongoing limitations. Plaintiff also argues Defendant's argument is post hoc rationalization, ECF No. 23 at 4, however the ALJ offered the timing of Ms. Nelson's opinion as a reason to reject the opinion and the ALJ summarized Plaintiff's subsequent improvement after the opinion, Tr. 23-26. The ALJ's finding that Ms. Nelson's opinion reflected temporary limitations is supported by substantial evidence. This was a germane reason to reject the opinion.

### 3. *Mr. Massenburg*

On December 8, 2016, Mr. Massenburg, a treating physician assistant, rendered an opinion on Plaintiff's functioning. Tr. 332-34. He stated Plaintiff has reduced equilibrium and gait stability, most pronounced with climbing, and PTSD. Tr. 333. Mr. Massenburg opined Plaintiff's balance problems cause marked limitations in all areas of functioning, and he is limited to sedentary work. Tr. 333-34. The ALJ gave Mr. Massenburg's opinion no weight. Tr. 26. As Mr. Massenburg is not an acceptable medical source, the ALJ was required to give germane reasons to reject his opinion. *See Ghanim*, 763 F.3d at 1161.

First, the ALJ found the objective evidence is inconsistent with Mr. Massenburg's opinion. Tr. 26. A medical opinion may be rejected if it is

ORDER - 16

unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan*, 242 F.3d at 1149; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Furthermore, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes.  *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  The ALJ found the treatment records do not reflect the degree of equilibrium problems reflected in Mr. Massenburg's opinion.  Tr. 26.  As discussed *supra,* while there are multiple references to Plaintiff reporting equilibrium issues, there is minimal objective evidence of the issue.  Plaintiff generally had a normal gait.  Tr. 22, 24 (citing Tr. 250, 306).  Plaintiff had multiple generally normal examinations, including an April 2017 consultative examination.  Tr. 358-61.  Plaintiff failed to challenge this reason.  This was a germane reason to reject Mr. Massenburg's opinion.

Second, the ALJ found Plaintiff's activities of daily living are inconsistent with Mr. Massenburg's opinion.  Tr. 26.  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  The ALJ noted Plaintiff reported handling his own bills, shopping, going on walks, spending time with others, handling his personal care, getting along with others, performing household chores and home maintenance, job searching online, and performing

ORDER - 17

1  mechanical work occasionally.  Tr. 26-27. (citing Tr. 211-18).  Plaintiff also

2  reported he can walk for "miles probably" before needing to stop and rest, and

3  reported no issues with squatting, bending, standing, reaching, sitting, kneeling, or

4  using his hands.  Tr. 216.  Plaintiff has reported he is able to drive, ride public

5  transit, go to community events, and go out alone.  Tr. 392.  He also reported

6  riding motorcycles and motocross bicycles, building remote control cars, and

7  watching movies; Plaintiff testified he was able to engage in those activities at the

8  time of his application, but his condition worsened after he filed his application.

9  Tr. 60.  Plaintiff failed to challenge this reason.  This was a germane reason to

10  reject Mr. Massenburg's opinion.

11         Third, the ALJ found Mr. Massenburg's opinion is inconsistent with Dr.

12  Leinenbach's opinion.  Tr. 26.  An ALJ may choose to give more weight to an

13  opinion that is more consistent with the evidence in the record.  20 C.F.R. §

14  416.927(c)(4) ("[T]he more consistent a medical opinion is with the record as a

15  whole, the more weight we will give to that medical opinion."); *Nguyen v. Chater*,

16  100 F.3d 1462, 1464 (9th Cir. 1996).  Relevant factors when evaluating a medical

17  opinion include the amount of relevant evidence that supports the opinion, the

18  quality of the explanation provided in the opinion, and the consistency of the

19  medical opinion with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028,

20  1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. §

416.927(c)(6) (assessing the extent to which a medical source is "familiar with the other information in [the claimant's] case record"). The ALJ gave great weight to the opinion of Dr. Leinenbach, who opined Plaintiff had no exertional or postural limitations, but he should not work at unprotected heights or operate heavy machinery. Tr. 25. The ALJ found Dr. Leinenbach's opinion is well-supported, consistent with limitations noted in the record and consistent with his own examination, the record as a whole, and Dr. Martin's opinion. *Id.* This was a germane reason to reject Mr. Massenburg's opinion.

Lastly, the ALJ noted Mr. Massenburg is not an acceptable medical source. Tr. 26. The ALJ is required to consider evidence from non-acceptable medical sources. 20 C.F.R. § 416.927 (2012). Although an individual's status as a medically acceptable source may impact the amount of deference the ALJ gives to an opinion, the ALJ may not reject an opinion as to a claimant's limitations because the opinion comes from a non-acceptable medical source. *Id.* As the ALJ considered Mr. Massenburg's opinion and considered the fact that he is not an acceptable medical source as one factor along with several others, this was a germane reason to reject the opinion.

### 4. Dr. Marks

On December 1, 2016, Dr. Marks performed a psychological examination and rendered an opinion on Plaintiff's functioning. Tr. 391-402. Dr. Marks

ORDER - 19

1 diagnosed Plaintiff with generalized anxiety disorder, PTSD, and major depressive

2 disorder, recurrent episode, severe.  Tr. 393.  Dr. Marks opined Plaintiff has no or

3 mild limitations in his ability to perform routine tasks without special supervision;

4 moderate limitations in his ability to understand, remember, and persist in tasks by

5 following very short and simple instructions, learn new tasks, make simple work-

6 related decisions, maintain appropriate behavior in a work setting, and understand,

7 remember, and persist in tasks by following detailed instructions; and marked

8 limitations in his ability to adapt to changes in a routine work setting, be aware of

9 normal hazards and take appropriate precautions, ask simple questions or request

10 assistance, communicate and perform effectively in a work setting, set realistic

11 goals and plan independently, and perform activities within a schedule, maintain

12 regular attendance, and be punctual within customary tolerances without special

13 supervision.  Tr. 400.  He opined Plaintiff's conditions overall have a marked

14 severity rating, and Plaintiff will be limited for 18 months.  *Id.*  The ALJ gave Dr.

15 Marks' opinion no weight.  Tr. 26.  As Dr. Marks' opinion is contradicted by the

16 opinion of Dr. Miller, Tr. 363-66, the ALJ was required to give specific and

17 legitimate reasons, supported by substantial evidence, to reject the opinion.  *See*

18 *Bayliss*, 427 F.3d at 1216.

19     First, the ALJ found Dr. Marks' opinion was inconsistent with his own

20 examination of Plaintiff.  Tr. 27.  A medical opinion may be rejected if it is

ORDER - 20

1   unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at

2   1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d

3   at 1019.   Furthermore, a physician's opinion may be rejected if it is unsupported by

4   the physician's treatment notes. *Connett*, 340 F.3d at 875.   The ALJ found Dr.

5   Marks' opinion was inconsistent with his examination of Plaintiff, which

6   demonstrated anxiety and depression, but also that Plaintiff was friendly,

7   cooperative, fully oriented, had normal perception, fund of knowledge,

8   concentration, insight, judgment, eye contact, memory, and thoughts.   Tr. 26

9   (citing Tr. 395-96, 401-02).   Plaintiff contends Dr. Marks' opinion is consistent

10  with this examination of Plaintiff, as Plaintiff was depressed and anxious, and

11  Plaintiff self-reported PTSD symptoms, moderate anxiety and severe depression

12  symptoms.   ECF No. 18 at 13-14 (citing Tr. 399, 401).   While Plaintiff offers an

13  alternate interpretation of the evidence, the ALJ's finding that Dr. Marks' opinion

14  is inconsistent with his examination is supported by substantial evidence.   This was

15  a specific and legitimate reason to reject the opinion.

16       Second, the ALJ found Dr. Marks' opinion was inconsistent with Plaintiff's

17  activities of daily living.   Tr. 27.   An ALJ may discount a medical source opinion

18  to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at

19  601-02.   While Plaintiff alleges an inability to work primarily due to difficulties

20  caused by anxiety and impaired concentration, vision, and balance, Tr. 55-56,

ORDER - 21

Plaintiff has reported handling his own bills, shopping, going on walks, spending time with others, handling his personal care, caring for a puppy, getting along with others, performing household chores and home maintenance, job searching online, performing mechanical work occasionally, riding motorcycles and motocross bicycles, building remote control cars, and being able to walk for miles before needing to take a break.  Tr. 21, 26-27 (citing Tr. 211-18); Tr. 58-60.  While Plaintiff testified he began having difficulties with activities after his injury in 2015, and he no longer regularly engages in many of his past reported activities including mechanical work, Tr. 59-61, Plaintiff reported injuring his elbow in 2016 while performing mechanical work, Tr. 301, reported in his March 2017 function report that he continued to perform mechanical work "as much as possible," Tr. 215, and again reported in June 2018 that he works on cars occasionally, Tr. 408.  The ALJ reasonably found that Dr. Marks' opinion that Plaintiff's mental health conditions cause marked limitations is inconsistent with Plaintiff's activities of daily living.  This was a specific and legitimate reason, supported by substantial evidence, to reject the opinion.  Plaintiff is not entitled to remand on these grounds.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 18 at 15-17.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's

ORDER - 22

testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim*, 763 F.3d at 1163 (citations omitted).  General findings are

insufficient; rather, the ALJ must identify what symptom claims are being

discounted and what evidence undermines these claims.  *Id*. (quoting *Lester*, 81

F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain

why it discounted claimant's symptom claims)).  "The clear and convincing

[evidence] standard is the most demanding required in Social Security cases."

*Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r

of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

1    Factors to be considered in evaluating the intensity, persistence, and limiting

2    effects of a claimant's symptoms include: 1) daily activities; 2) the location,

3    duration, frequency, and intensity of pain or other symptoms; 3) factors that

4    precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

5    side effects of any medication an individual takes or has taken to alleviate pain or

6    other symptoms; 5) treatment, other than medication, an individual receives or has

7    received for relief of pain or other symptoms; 6) any measures other than treatment

8    an individual uses or has used to relieve pain or other symptoms; and 7) any other

9    factors concerning an individual's functional limitations and restrictions due to

10   pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

11   416.929 (c).  The ALJ is instructed to "consider all of the evidence in an

12   individual's record," to "determine how symptoms limit ability to perform work-

13   related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

14   The ALJ found that Plaintiff's medically determinable impairments could

15   reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

16   statements concerning the intensity, persistence, and limiting effects of his

17   symptoms were not consistent with the evidence.  Tr. 21-22.

18   *1.  Inconsistent Objective Medical Evidence*

19   The ALJ found Plaintiff's symptom claims are inconsistent with the

20   objective medical evidence.  Tr. 21-23.  An ALJ may not discredit a claimant's

ORDER - 24

symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

Here, the ALJ found that Plaintiff's physical symptoms were not as severe as he claimed. Tr. 21-23. After his August 2015 injury, Plaintiff underwent surgery in September 2015, and had multiple generally normal physical examinations after his surgery. Tr. 22-23 (citing Tr. 249-50, 257, 306, 326, 330, 359-60, 657). Plaintiff generally had a normal gait, without objective documentation of balance issues. Tr. 22, 24 (citing Tr. 250, 306); Tr. 302, 313, 330, 358-59. Plaintiff reported blurry vision, double vision, and balance issues on multiple occasions in 2016 through 2018, Tr. 35-37, 44, 328, 258, 458, however the self-reported symptoms were not accompanied by objective evidence of the symptoms or limitations. For example, at an August 2015 visit, Plaintiff complained of vision issues, but the examination notes his extraocular movements were intact, and he had no diplopia. Tr. 271. Plaintiff cites only to his self-report as evidence of his

symptoms.  ECF No. 23 at 2.  In July 2018, Plaintiff denied having double vision, blurred vision, or headaches.  Tr. 23 (citing Tr. 656).

The ALJ also found Plaintiff's mental health symptoms were not as severe as he claimed.  Tr. 23-24.  Plaintiff had multiple generally normal mental examinations after his injury.  *Id.* (citing Tr. 250, 358-59, 364-66).  Additionally, Plaintiff reported improvement in his psychiatric symptoms with medication.  Tr. 23-24 (citing Tr. 325, 406, 408).  The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. § 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).  By April 2017, Plaintiff reported his depression symptoms had lessened, he was supporting himself by occasionally working on cars, and he was job hunting.  Tr. 24 (citing Tr. 406, 408).  Plaintiff argues Dr. Marks' opinion is consistent with Plaintiff's symptom claims, ECF No. 23 at 2-3, however the ALJ gave specific and legitimate reasons to reject Dr. Marks' opinion, as discussed *supra.*  On this record, the ALJ reasonably concluded that the objective medical evidence is not consistent with Plaintiff's complaints of disabling symptoms.  This finding is supported by substantial evidence and was a clear and convincing

reason, along with the other reason offered, to discount Plaintiff's symptoms complaints.

### 2. Activities of Daily Living

The ALJ found Plaintiff's symptom claims are inconsistent with his activities of daily living. Tr. 21-23. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ found that despite his allegations of significant limitations, Plaintiff reported he can pay bills, shop in stores, go on walks, ride motorcycles and motocross bicycles, build remote control cars, go out alone, spend time with others, watch movies, handle his own personal care and household chores/maintenance, perform some mechanical work, care for a dog, and job hunt online. Tr. 21. Plaintiff continued to perform some mechanical work in 2016

ORDER - 27

through 2018.  Tr. 215, 301, 408.  While Plaintiff argues his activities are not inconsistent with his symptom claims, ECF No. 18 at 15-16, the ALJ reasonably found Plaintiff's activities are inconsistent with his claims of disabling limitations for the reasons discussed *infra*.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms complaints.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 22**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED February 10, 2021.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 28